Welcome back everybody. Day three of our happily in-person sitting here in Jacksonville. I realize that I might have misspoken. I bragged on day one that we were the first panel to be back in person, but I think three of our colleagues are actually sitting in Miami simultaneously, so we'll take a tie for first. But we're happy to be back, happy you're back. This is how it should be done. So we have three cases today rather than four. You guys understand, you've been here before, you understand our traffic light system, green go, yellow, again to think about winding up, red, please do wind it up. We're not the type who are going to cut you off mid-syllable, want you to finish your thought. And if we carry you beyond the allotted time, don't sweat it. You're on our time as Judge Jordan likes to say and not yours. And please know, of course, that we've read your briefs carefully. The underlying cases, statutes, record material. So I urge you just to go straight to the heart of the matter. No need for any factual procedural wind up. We understand it, sort of how the case got here, what it's all about. Just get to it. Your time is limited. So with that, we'll call the first case, which is United States of America v. Anthony Moore, 20-11215. We have Ms. Howard here for Mr. Moore. And the side are here for the Eppley. All right. Ms. Howard. Thank you, Your Honor. Good morning and may it please the Court. There are several issues in Mr. Moore's consolidated appeal. And with the Court's permission, I'd like to start with a contempt judgment and specifically the District Court's failure to protect Mr. Moore's right to allocute. Finding precedent dictates that Mr. Moore had a right to be heard before the District Court imposed the summary contempt punishment. What binding precedent are you referring to? That would be Brannon, Your Honor, which is an old Fifth Circuit case. And in Brannon, the Court held that a defendant has a right to warning of the contempt, contemptuous conduct and the consequences of it. And also that the defendant had the right to allocute before the Court imposed the summary contempt finding and punishment. Can I ask you just a couple of questions? Because there were a few cases not cited in the briefs, but older U.S. Supreme Court cases that seem to say pretty clearly that, for instance, there's this, and this is not a quiz show. I don't expect you to have read these. I'm kind of springing them on you. But a case called In re Terry, decided in the late 19th century with the Supreme Court, quoting Blackstone, says, if the contempt be committed in the face of the Court, the offender may be instantly apprehended and imprisoned at the direction of the judges without any further proof or examination. And so in light of Brannon's, you know, sort of, you call it holding, maybe it's holding, maybe it's dicta, but in light of sort of this competing rules arising out of Brannon and the U.S. Supreme Court, how can it be, how can the error be plain? I have a couple of answers to that, Your Honor. The first, as to Terry, I believe if you keep reading Terry, it goes on to say, you know, a defendant doesn't have a right to formal notice and a formal opportunity to answer the charges. And I think the right to allocute in this context under Brannon is not, of course, a formal opportunity to answer the charges. It's simply a brief opportunity to be heard before he's summarily punished. Well, I guess my question is, is it the right to allocute, are you sort of suggesting that when you're sentenced, before you're sentenced, you have a right to allocute? Are you sort of, is that what you're suggesting, that we do? So there is a right to allocute before sentencing in general, Your Honor, and that right has been codified under, is a common law right stretching back to the 1600s. It's been codified in Rule 42 of the Federal Rules of Criminal Procedure, but particularly in the contempt context, that rule is not based on a Federal Rule of Criminal Procedure, but is instead based, as Brannon discusses, on, you know, preserving judicial integrity and preserving fundamental fairness. And that's especially important in the direct contempt context, because there are such limited procedures, right? There's nothing other than, really, this brief opportunity to be heard before punishment and a simple warning. But you agree that there's a difference between a direct contempt proceeding and an indirect contempt proceeding? Yes, Your Honor. And here, we're proceeding under a direct contempt, where your client performed several things or said several things that, in front of the judge, that caused the judge to try to control your client and your client refused to behave, for lack of a better word. Correct. So this is direct contempt. We don't contest that at all, Your Honor. But Brannon created a right, even in the context of direct contempt, that before the summary punishment, a district court needs to at least give a brief opportunity to allocute. And I know there is some tension here because of Mr. Moore's conduct, right? His conduct was being, you know, verbally interruptive of the court. But I think that makes the right all the more important here, because the district court's attempt to warn Mr. Moore was to threaten to have him bound and gagged if he spoke, when in fact he had this right to allocute. And it would have been relatively simple in this context, after the district court warned Mr. Moore that his conduct, if continued, could result in a contempt finding, and Mr. Moore interrupted again to then say, you know, Mr. Moore, I told you that this was contempt. Do you have anything you want to say before I sentence you? And maybe Mr. Moore wouldn't have taken the opportunity to talk about mitigating information for the contempt, but maybe he would, and he had a lot that he could have said at that point. And then, you know, we would have satisfied, the court would have satisfied Brannon, and there wouldn't have been, you know, this denial of Mr. Moore's right to allocute. If a defendant has an allocution right during the summary contempt proceeding, are you suggesting there's also a requirement that the sentencing judge consider the contents of the allocution? I mean, can the judge disbelieve the defendant without any evidence in the record to the contrary? I think certainly the district court can disbelieve the defendant. He can hear the defendant's statement and decide whether it is a honest, heartfelt statement that affects the court's decision as to whether the conduct was excusable, which is what the Supreme Court talks about in Grappe v. Leslie when it says that normally a contemptor, even in direct contempt, summary contempt proceedings, should have a right to allocute. Or it could decide that, you know, as in Mr. Moore's case, that there were maybe perhaps mitigating circumstances that would show that a lesser sentence was appropriate. But it certainly doesn't have to, doesn't have to give a lower sentence or believe that the defendant is remorseful. But it has to make sure that the defendant knows that he has an opportunity to make his brief statement on his own behalf. Can I maybe sort of reorient the argument a little bit away from the contempt issue to what I'll call the greater apprendi issue, a statutory piece of it and then a constitutional piece of it. I mean, I think at least you've got a not insubstantial statutory argument under 3583E3. But I do think you have a panel precedent problem. I mean, Cunningham seems pretty clearly to say, right or wrong, that the statute is not subject to an aggregation interpretation. So here's why I would say that Cunningham does not foreclose Mr. Moore's argument. And it's because Cunningham, like any decision of this court, is limited to the facts and the circumstances and the issues that were before the court in that case. And in Cunningham, the way the court phrases the issue is that it was asked whether 3583E was constrained by 3583H. And the question. Right. But I guess, so, I mean, this is the argument that I would make as well, that, I mean, we also have precedent saying that a prior panel precedent can't be circumvented or ignored on the basis of arguments not made or considered by the prior panel, right? I mean, like, so we have to sort of take Cunningham on its face and not sort of peel the onion back and try to decide what was going on behind it. That's correct, Your Honor. I think there's a little bit of a difference between a different argument that's being made and a different issue that's being presented. And so that's the fine line that I would draw here, is that the issue that was presented in Cunningham was, what does the term authorized by statute mean? And does it mean authorized by statute in 3583H? Or does it mean authorized by statute in 3583B, by the offense of conviction? And that was the question the court held. It means authorized by statute from the offense of conviction, so 3583B. And we agree with that. And that is the aggregate term of imprisonment that could be imposed upon revocation of supervised release. So, I mean, I actually wonder about the constitutional piece of this, even if Cunningham binds us to the statutory interpretation that there's, you know, that there is no aggregation interpretation. I've read the other Cunningham, I can't remember first names, but the other Cunningham. A bit confusing. And Hamond closely and over and over and over. Are you aware of any cases in which a supervised release revocation has carried the defendant beyond what I'll call, what I've taken to calling, the total prisonable time, the sentence itself, plus the supervised release term on what I'll call the Alito interpretation of the statute? Other than Mr. Moore's case, the only one that, and I'm not, I'll give it a small caveat, is the Eighth Circuit case that we cited in our briefs, Two Crow. And in there, Mr. Two Crow was given, upon re-imprisonment, his post-revocation imprisonment exceeded the statutory maximum term of supervised release. I'm not sure if it's clear from the opinion if his initial sentence was the maximum sentence like Mr. Moore's. But I think the fact that there's such little case law on it supports that this is really not how the Constitution is supposed to work. And if this court were to find that there's a constitutional problem, it wouldn't throw a gigantic wrench into how supervised release works, you know, on a regular basis. This is a rare loophole that, unfortunately, Mr. Moore has found himself in. The hard part, I think, I think there are actually like pretty good arguments on both sides of this constitutional question. The hard part, I think, for you is the broad language in the Alito opinion, which I think, frankly, at some level of generality, Justice Breyer agreed with at a methodological level. So I'm just going to refer to the Alito opinion. The broader piece of that that says that supervised release revocations simply aren't part of the criminal prosecution within the meaning of the Sixth Amendment, and that the defendant is no longer an accused at that point, how do you deal with the broad pieces of the Alito opinion? Absolutely. So I read those broad pieces of the Alito opinion as being sort of under the umbrella of that initial explanation of what the maximum term of confinement authorized is. So when we're talking about, you know, you're no longer the accused and you're not part of a criminal proceeding, it's because supervised release, as it is intended to work, is part of the sentence administration. You've got, in Mr. Moore's case, the three years post the 10 years that can be administered by the court through findings by a preponderance of the evidence, because you're not, you're no longer the accused as to that total potential term of imprisonment that Justice Alito identified. But once you get beyond that, once you're no longer part of the sentence administration of that complete sentence that you were exposed to, that you had warning of due process and jury trial rights of the initial offense, then no longer does that sort of limited procedure or that sort of more general explanation that Justice Alito had apply. And so similar question, when Justice Alito is talking about revokees, we'll call them, having only conditional liberty and not unconditional liberty, is the idea under your interpretation that once you've reached that sort of max prisonable time sentence here, the 10 plus the 3, that at that point you actually, that the individual actually has an unconditional liberty interest? That's correct, Your Honor. I got you. I got you. Okay. All right. So I've carried you over a minute. Do you guys have additional questions? No. Okay. Thank you very much. Thank you. You've reserved your time for rebuttal. All right. Ms. Sider? Am I pronouncing that correctly? Yes. That's perfect. May it please the court. Mr. Moore hasn't met his burden of showing a plain error that warrants reversing either one of his terms of imprisonment. This court should affirm both. I'll start with the contempt sentence and his due process challenge to that. He has a fundamental right to be heard on his own behalf before the court imposes the sentence. He was given that opportunity here, and he knew he had that opportunity, given by the opportunity. And the context in which he took that opportunity further shows his knowledge, because he spoke after he had conferred with his counsel in direct response to the court, opening up the floor to Mr. Moore's counsel to say whatever she wished to say on behalf of Mr. Moore about the contempt. And the statements that Mr. Moore said also show that he knew that this was his chance to mitigate his contempt, because his statements directly related to his contemptuous conduct. He had interrupted the court multiple times as it was pronouncing sentence to say, I didn't touch nobody. All I am guilty of is being a drug addict. And then he later, after talking to his counsel, he stands up to say, I just want to say that I didn't mess with nobody out there. But wasn't that all done after he was found in contempt? It was done after the court said that he was in contempt, yes. But isn't the argument that opposing counsel is making is that he has a right to make an allocution prior to being held in contempt? It's prior before he's imposed. The sentence for the contempt is imposed. So between the declaration of contempt and the imposition of the sentence of contempt, that's when they're saying he has a right to be heard. Is that right? Yes. And he was given that. And just because the court said, I find you in contempt, and through a series of escalating warnings finally said, when he kept on interrupting, the court said, you get six months, that wasn't the imposition of the sentence. And that's made clear by, that's obvious based on what happens afterwards. The court's colloquies with the prosecutor and the colloquy with Mr. Moore's counsel. The court asked the prosecutor, I think that's direct contempt. Correct me if I'm wrong. Is that indirect or that's direct? And then he turns to Mr. Moore's counsel and says, what would you like to say? Is there anything you would like to say on behalf of Mr. Moore? That shows that he was, the district court, wanted to get the party's positions about the propriety of this contempt sanction. And he was opening up the floor for them to do so. So are you suggesting that counsel is correct, that there should be an allocution prior to sentencing? Yes. You do believe that there should be an allocation prior to sentencing? There's a due process right to an allocution. But he doesn't have a due process right to the specifics, to any specific type of procedure and how he gets the opportunity to allocute. It's a due process right to have an opportunity to personally address the court before the court imposes sentence. That was provided here. And he took that opportunity. So in providing it to counsel, you're saying that satisfied his allocution right? Not just providing it to counsel, I mean, it was all the circumstances that led up to. But isn't the point of the allocution is, unless the defendant is unable to speak, isn't the allocution right belong to the defendant? Yes. And so isn't the allocution something that you should ask the defendant, do you wish to say something to the court prior to sentencing? You could do that. Isn't that normally how it works? Yes, that is normally how it works. And normally it's because it's under Rule 32, which has an express requirement that the court personally address the court in prompting the opportunity to mitigate. We're not bound by Rule 32. We're bound by what the fundamental due process right is. And all that requires is that he have an opportunity to be heard before the sentence is imposed. And it doesn't matter whether that opportunity is prompted by a direct invitation from the court, like here. And I think that there are some circumstances, there are cases, there could be a case in circumstances where it would call for the court to issue a personal invitation, but that wasn't the case here. Because everything here showed that he knew he had the opportunity to allocute because he did. So while it might have been a better practice for the court to have addressed the defendant personally, it was close enough, and considering all the circumstances of how this proceeding is evolving, to have turned to counsel and say, and offering the opportunity through counsel. That's your position? Yeah. Our position is that what the court did was enough. If the court had, you know, if you think about what happened here, the court very well may have intended to personally ask Mr. Moore if there was anything he wanted to say. The court, but Mr. Moore, after conferring with his counsel, stood up to talk and address the court. At that point, there was, it was obvious that he knew that he had this opportunity, so maybe the court didn't see the point of asking, is there anything you want to say to me, when he had just stood up and said what he wanted to say. So for that reason, and there is no governing law that shows that anything the court did here was wrong, or that violated the due process violation. All that Brandon holds is that he had an opportunity to be heard on his behalf, and that was provided here. Can you sort of help me with the Apprendi piece of this, if you're done talking about contempt? Sure. I mean, do you have, two crow aside, I suppose, maybe, do you have any cases in which the defendant's supervised release revocation has carried him beyond what I've called the maximum prisonable time, here, the ten plus three? No. Does it trouble you, I guess, that, you know, Apprendi is pretty clear when the court says that the, you know, sort of the maximum penalty must be charged in the indictment submitted to the jury, proven beyond a reasonable doubt, and then Blakely says the maximum penalty is maximum sentence that a judge may impose solely on the basis of facts reflected in the jury verdict? And what was that here? Well, I guess I should just ask, what is that here? What is the maximum penalty within the meaning of Apprendi and Blakely here, even on the Alito interpretation in Haman? I think the Alito interpretation, or the Alito dissent interpretation, I think that's an interesting equation, and I can see that, that that would be how you frame the statutory maximum. But I'm not... How else would you frame it? Hmm? How else would you frame it? I mean, it seems to me that the Alito interpretation, which again, I think I'm kind of giving you the benefit of the doubt here, because I suppose the other side might say, no, no, no, Gorsuch and Breyer is really on board with Gorsuch. But I actually think that Breyer in this respect is sort of on board with Alito, so I'm giving you the benefit of the doubt. And Alito, I think in this case, would say 10 plus 3. Right? Gorsuch might say 10, but Alito is going to say 10 plus 3. And how else would you interpret the statutory maximum? So that is the statutory maximum for his underlying firearm offense here. But I'm not troubled by it, because Apprendi doesn't apply in a revocation proceeding. So it doesn't... No, go ahead. You're good. Go ahead. And Apprendi didn't turn on, in the cases that hold that Apprendi doesn't apply, didn't turn on exactly how you calculated the statutory maximum for the offense. They treated the statutory maximum, or the maximum allowed by the jury, as whatever the term of imprisonment. And the question before these courts was, if it exceeds the statutory maximum, does he have a due process right, a Sixth Amendment right, to a jury trial? And they said no, because of the nature of a revocation proceeding, that the Sixth Amendment right doesn't even come into play at all. So this distinction on exactly whether the maximum is just the imprisonment term maximum, or max 10 years plus 3, it doesn't matter, because the right doesn't come into play at all. So basically, I guess on your interpretation, the district court could find a violation of supervised release, and sentence, in a revocation proceeding, by a preponderance of the evidence, judge found facts only, sentence the defendant to life. And there's no Sixth Amendment problem with that. Maybe there's an Eighth Amendment problem with that, but there's no Sixth Amendment right to a jury finding of a fact that would land you in prison for the rest of your life in a revocation proceeding. Well, here, no, that he's limited by this maximum under 3583E, so here the maximum that the court could have imposed per revocation would be two years. So there's a statutory limit, but no, but there would be no Sixth Amendment problem with finding a fact by a judge, by a preponderance, landing you in prison for the rest of your life. Well, there, I mean, because, you know, you're saying, look, revocation proceedings, you're saying, Newsom, you need to stop sort of focusing on the Sixth Amendment, because revocation proceedings sort of per se are outside the scope of the Sixth Amendment. So I think that that means that there is no constitutional, no, sorry, no Sixth Amendment limit on the length of time to which a judge can find a fact and sentence someone to prison in a revocation proceeding. Yes, but there's no revocation, there's no imprisonment for revocation that exceeds five years. Yeah, so the statute mitigates the harm that I'm talking about, I guess. Correct. But if Congress in its judgment were to say, you know, come to think of it, those 3583 caps are too short, we should extend them, then there would be no constitutional barrier on them doing that. As the law stands now, there isn't. So can I ask you one more question, and then I'll shut up and let my colleagues ask a question. So Justice Alito in Haman makes a lot of analogies to parole, right? In the parole days, and I don't know the answer to this question, I think, I suspect what the answer might be, but I don't know the answer, and you might. In the parole days, could a revokee, could a parole revokee, if that's even the right word, ever be put away for longer than the remainder of his sentence? So if a criminal defendant is sentenced to ten years in the parole days, he's going to get out after three, let's say, and he's going to have seven years of parole. He's two years into parole, violates parole, is the district court limited to putting him away for the remainder of the term, five years, or could the district court have said, you violated parole, I find that you violated parole and so I'm going to put you away for 20? I apologize, I don't really know the framework around the parole days. If we're, if it's similar to revocation, which I think it is, he could sentence him up to the, he could sentence him beyond the time that he had left to serve on his, on his parole. Wow. I just didn't realize that. Maybe that's true. I didn't realize that. Well, I mean, the supervision, supervised release term is part of the penalty for the original offense. And I think, I think, frankly, I actually kind of think there's kind of raging agreement about that here. I think that the other side would be willing to give you the 10 plus 3. Their argument is that here, oddly, sort of, it's almost a unicorn kind of case that carried this guy beyond the 10 plus 3. Yes, and, but the violation of that supervision is not, is a separate matter from the original offense. So although this entire supervision term and the revocation of it arises from the sentence for the original offense, his violation of it is a separate act that is separately sanctioned. So long as he's serving a lawful term of supervised release, there has to be a way to enforce compliance with it. And it has to be that he can be punished by additional imprisonment. And especially when Congress has never said otherwise. Additional imprisonment as a result of the violation probation. Let's say the violation probation, and I'm not saying in this case, but let's say the violation is the defendant is, commits an armed robbery, right? That's obviously a crime that has separate charges. So in addition, he's going to get charged separately on that crime. Are you suggesting that he then, as a result of the probation violation, which is another act, another criminal act, he can be sentenced by the district court judge to a term that is longer than the original term? He can, the district court can sentence the defendant to the amount of time that's authorized by 3583 E. So he can sentence up to, in this case, two years imprisonment. In addition to whatever, whatever he gets prosecuted for, for his armed robbery and whatever he gets sentenced to, that's just, that's an entirely different matter. So let's say that his supervised release, he had supervised release term of two years and he was, he had two days left of supervised release and he commits the armed robbery on, with two days left to go. Your suggestion is he could have an additional two years tacked on, even though he only had two days remaining? Yes. Okay. Because he committed an additional act of violating the supervision. And that is a separate, that's separate conduct that has its own penalties attached to it. Unless, I see my time is up. Unless this court has any other questions? Yes, this court did. Thank you very much. All right, Ms. Howard, you've got five minutes of rebuttal time. Thank you, Your Honor, and just a few points that I'd like to make in rebuttal. First, just briefly on, on the allocution right, which the government concedes Mr. Moore did have, have a right to allocute. Just wanted to push back on, on this idea that Mr. Moore had an opportunity to allocute and that the context shows that he did. It's really the opposite. The context shows that the district court did not inform Mr. Moore that he had a right to allocute. To the contrary, the district court told Mr. Moore to be quiet. The district court told Mr. Moore that he was going to be bound and gagged if he spoke. I don't think you could get sort of more contrary to telling someone they have a right to speak than threatening to bind and gag them. And you know, then, although the court did eventually ask counsel if she had wanted to say anything on Mr. Moore's behalf, not only is that insufficient under analogous allocution case law and outside of the contempt context, but also in this specific context, it told Mr. Moore, it reinforced what the court had been telling Mr. Moore. You don't speak. Your counsel can speak. And so for all those reasons, I would say that the context showed Mr. Moore he did not have a right to speak. And although he did make a brief statement, I would say after the court sentenced him to six more months imprisonment consecutive, that statement, we know, you know, he wasn't informed that he had a right. And from the content of the statement, he wasn't talking about his contempt conduct. He wasn't explaining why he felt the need to interrupt. He wasn't trying to mitigate that sentence. He was talking about something from earlier in the proceeding. And so we know he didn't understand that he had the right, that the district court was required to ensure that he had. And turning to the Apprendi issue, Cunningham does not foreclose Mr. Moore's argument. And the reason for that, and again, this is a fine line, I recognize, but again. What about the 600 F. 3rd Cunningham or the 800 F. 3rd Cunningham? R. Scott Cunningham about the constitutional Apprendi issue is that Cunningham, like every other case, is limited to its facts. So it did not consider a case where, like in Mr. Moore's situation, a defendant was sentenced to a total term of imprisonment that exceeded what I would say eight, really nine justices have now said would exceed the maximum lawful prison term. And so it can't extend and be prior panel precedent that forecloses Mr. Moore's argument in this particular case. And as I said, Hayman does make plain from Justice Alito's dissent that 13 years is the absolute maximum that he can lawfully serve in prison. As Your Honor, Judge Newsom noted, the plurality might say 10 years, but either way, Mr. Moore's sentence of 13 and a half years far exceeds that maximum lawful prison term. And Justice Alito, in his dissent, did note that if there was a way that supervised release worked in which a defendant was sentenced beyond that maximum lawful prison term, that would be a serious constitutional defect. That's what he said. What about Ms. Sider's argument that given sort of the back half of 3583E3 that has these kind of like caps built in, these absolute caps, that there's, you know, for this class crime I think there's like a two-year sort of max. And it sounds to me, if I'm understanding her argument correctly, that she would sort of like build that into the max supervised release term for the crime of conviction itself. Does that sort of mitigate the constitutional problem? I don't think it does. And I don't think that's how Justice Alito read or interpreted the maximum lawful term of supervised release. Because he didn't speak of it just sort of abstractly of like what does the statute authorize. He specifically gave numbers. You know, I believe the numbers were, you know, if someone was sentenced to three years certain confinement with six years of parole or supervised release afterwards, it's nine years certain confinement. And for Mr. Moore's case, that's 13 years certain confinement. Whether or not a statute would potentially permit more, there's a constitutional problem with going over Mr. Moore's 13 years. Do you know the answer to my parole question, by the way? Could you ever, could a district court ever have sentenced to someone to spend time in jail beyond the max term? My understanding was no, Your Honor. That the parole board had to work within what was sort of remaining on the potential term of confinement. So, again, you know, if it was six or three and six for a total of nine, that the parole board was, had to focus on, you know, sentencing within that remaining nine years. But I don't, I don't have a citation for Your Honor to support that. And the final thing, I just wanted to notify the court that Mr. Moore does have a release date of October 20th of this coming year. And so, we do respectfully request that Your Honor's rule on his appeals as expeditiously as possible. Okay. Very well. Thank you. Thank you both very much. Interesting case. Good arguments. Thank you.